PROPOSAL FOR HANNAH BARGE – REEFER PIPES PROJECT (THE "PROJECT")
FIRM BID: 1645-R3
SERVICE TERMS AND CONDITIONS
LEO'S WELDING AND FABRICATION LLC



Leo's Welding and Fabrication, LLC
4451 26th Ave. W
Seattle, Wa. 98199
P# 206.466.1692
F# 206.420.7288

Contact: leo@leoswelding.com    www.leoswelding.com

**Firm Bid**

| Date | Estimate # |
|---|---|
| 9/28/2023 | 1645-R3 |

**Name / Address**

NORTHLINE SEAFOODS
TE: EXEMPT
4690 SAWMILL CREEK RD
SITKA, AK 99835

| | PROJECT |
|---|---|
| | HANNA BARGE-REEFER PIPES |

| Description | Qty | Rate | Total |
|---|---|---|---|
| Scope: SEE "Proposal and Master Service Agreement - Northline" | | | |
| | | | |
| MATERIAL | | | |
| - Fitting and welding: ea, fabrication and installation of hangers, layout and project closing | 500 | 184.08 | 92,040.00 |
| - Fitting and welding: Safety Lines in Engine Room and Uper Deck | 1 | 90,480.00 | 90,480.00 |
| - Fitting and welding: Coolant pipelines for Upper deck and Aft Engine Rooom | 1 | 195,360.00 | 195,360.00 |
| - Fitting and welding: Coolant pipelines in Engine Room | 1 | 414,360.00 | 414,360.00 |
| | | | |
| PER DIEM | | | |
| - Meals | 672 | 59.00 | 39,648.00 |
| - Incidentals: transportation, 6 hr per person plus fuel | 72 | 136.94 | 9,859.68 |
| | | | |
| Note: | | | |
| - Lead Time: 8 Weeks, 12 people, 6 day/week, 10 hr/day. | | | |
| - Change order requests will be billed as additional labor at $120.00/hr flat rate and materials as required. | | | |

*** Unless otherwise quoted, Tax is not included; whether Tax Exempt Certificate is not presented, it will add up in your final invoice.
*** Per written and/or Change Order request, modification and/or addition to current project will be listed as separated items DUE on RECEIPT once the jobs are finished.
*** 3% Transaction Fee for Credit/Debit Card Payments.

| | |
|---|---|
| Subtotal | $841,747.68 |
| Sales Tax (10.25%) | $0.00 |
| **Total** | **$841,747.68** |

| Terms and Conditions: | This Firm Bid is subject to the Terms and Conditions attached to this Firm Bid executed by the parties, which are incorporated herein by reference. Any and all documents, notes, memoranda or attachments made pursuant hereto are incorporated herein and made a part of this Firm Bid. |
|---|---|
| **CONTRACTOR**<br><br>LEO'S WELDING AND FABRICATION LLC<br>a Washington limited liability company<br><br>By: _____<br>Leo G. Estrada, Manager | **CUSTOMER**<br><br>SAYAK LOGISTICS LLC, D/B/A NORTHLINE SEAFOODS<br>an Alaskan limited liability company<br><br>By: _____<br><br>Date: 10/25/2023 |

## SERVICES AGREEMENT
## TERMS AND CONDITIONS

1.  **Terms and Conditions; Change Order; Price.**

    (a)   Terms and Conditions. As of the Effective Date set forth in an applicable Firm Bid (the "**Proposal**"), into which these Terms and Conditions are attached and incorporated by reference (these "**Terms**"), Contractor hereby agrees to provide certain specialized fitting and welding services through its representatives or subcontractors to and for the benefit of Customer, including providing certain ancillary equipment related thereto (the "**Services**") for the Vessel described in the Proposal, specifically, that certain vessel commonly known as the "Hannah Barge", Vessel No. 1067457, located in Bellingham, WA 98225 (the "**Vessel**"), and Customer shall purchase and pay for the Services in accordance with these Terms. As consideration for the Services to be rendered by Contractor under these Terms, Customer shall pay to Contractor all "**Fees**" for the Services as contemplated by the Proposal.

    (b)   Change Order; Project Documents. The Project will be constructed according to the drawings and specifications agreed upon between the parties, and such drawings and specifications are incorporated herein by reference. The drawings, specifications, suggested bid structure, Proposal, any Change Order and these Terms shall collectively be referred to as the "**Project Documents**". Subject to the terms and conditions of these Terms and the Proposal, changes to these Terms, any drawings/specifications, and any Proposal can only be made by mutual written agreement of the parties (each, a "**Change Order**"). Any changes in the scope or timeframe, or any request for additional Services that are not agreed to in the initial Proposal, may extend any estimated timeline for delivery of the Services in such Proposal and increase the Fees due from Customer to Contractor. Customer shall be obligated to pay all Fees associated with the Project and any Change Order thereto. If Customer requests a Change Order, Contractor, in its sole and exclusive discretion, will determine whether it can comply with the requested changes and whether such changes would cause an increase in the Fees associated with the Services, the time required to complete the Services, or the effect on the performance of any part of the Proposal. Descriptions and prices for Contractor's Services are subject to change at any time and from time to time, in its sole and exclusive discretion, upon notice to Customer, provided that any such change shall not affect the scope of Services or price for any portion of Services set forth and agreed in the initial Proposal or as agreed in any Change Order.

    There are two sets of drawings appended to this contract: Contract Drawings and Manufacturing Drawings.

    Contract Drawings (provided in Appendix A) are used to communicate approximate scope, scale, and application considerations and include summary information for all major equipment and piping components. The Contractor understands that Contract Drawings do not contain final manufacturing details nor do they account for all accessories, accoutrements, and balance of plant components typical of industrial refrigeration systems, and which will be required in this system and included in the scope of this contract. Those items include but are not limited to field-fit pipe hangers, safety relief valves, safety relief piping, service ports, gauges, bulkhead fittings, fasteners, gaskets, and seals.

    Manufacturing Drawings (provided in Appendix B) will provide additional manufacturing information not included in the contract drawings, including but not limited to dimensions, tolerances, typical details, fasteners, and USCG-required weld verification procedures. Manufacturing Drawings will be provided to Contractor over the course of the project but are not all available at this time. The Manufacturing Drawings in Appendix B are for spaces 3S and 4S and have been submitted to the Contractor and provide an example of the nature of the additional information to be provided relative to the Contract Drawings.

    (c)   **Purchase Price; Fees.** Payment of the fees, costs, and expenses for Contractor's Services (collectively, the "**Fees**") will be made in accordance with the applicable Proposal. Unless otherwise stated in an applicable Proposal, Contractor shall **invoice** Customer the Fees as follows: (i) an amount equal to twenty percent (20%) of the Total Fees set forth on the Proposal upon execution of the Proposal (the "**Deposit**"); (ii) an amount equal to thirty percent (30%) of the Total Fees set forth on the Proposal upon November 1, 2023; (iii) an amount equal to 30% of the Total Fees set forth on the Proposal on December 1, 2023; and (iv) the remaining balance at project completion. Unless either otherwise set forth in writing by Contractor or in the event of a breach by Contractor, the Deposit is non-refundable, and Customer acknowledges and agrees that such Deposit has been earned by Contractor for the Project upon execution of the Proposal. Contractor shall invoice Customer for its Services performed on a periodic basis as set forth above; provided, however, no invoice shall be necessary for the Deposit, as the Deposit is due upon execution of this Agreement. Payment for invoices is due on Net 30 terms. If an Invoice is not paid within

30 days of receipt, Contractor may charge Customer interest on any overdue invoice amounts at the rate equal to the lesser of 1.5% per month or the highest rate permitted by applicable law, and may terminate and/or suspend its Services for amounts remaining unpaid for greater than thirty (30) days from the date on the applicable invoice. In addition to the foregoing, if Customer fails to compensate Contractor according to the Terms, Contractor, in addition to any other legal or equitable remedies or processes available to it, may terminate these Terms and its performance of the Services; provided, however, Customer shall remain liable and responsible for all unpaid Fees due to Contractor for Services actually performed. The Fees are exclusive of any sales, use, or privilege tax, personal property taxes, excise tax or any similar tax or charge that might be levied as a result of the production, sale, or shipment of any Customer Products, the use of the Customer Products by Customer, or the provision of the Services (the "**Taxes**"). Customer agrees to pay and shall be solely responsible for any and all such Taxes (excluding taxes based on Contractor's income). The Fees payable by Customer to the Contractor, described above, will be subject to Retainage. For each fee invoiced prior to substantial completion of the Proposal, Customer will withhold retainage from the payment otherwise due as follows: 10% retainage on payments to Contractor for project labor ("Retainage"). Portions of Retainage will, upon the approval of Customer's lender, promptly be released by Customer to Contractor upon completion of the applicable project labor associated with the Services, such that 100% of the Retainage shall be paid and released to Contractor upon completion of the Project.

2. **Term; Termination.** The term of these Terms shall extend from the Effective Date through the completion of all Services as set forth in the applicable Proposal (the "**Term**"), subject to the following termination provisions. Contractor may terminate any Proposal and these Terms, in whole or in part, for "Contractor Cause" upon not less than thirty (30) days prior written notice to Customer. For purposes of these Terms, "**Contractor Cause**" includes any of the following: (a) a material breach of these Terms or any Proposal by Customer, including, without limitation, any non-payment of any Fees when due; (b) any violation by Customer of any applicable federal, state and local laws, rules, orders, codes and regulations (collectively, "**Laws**"); or (c) if Customer is voluntarily or involuntarily dissolved, or is adjudged to be Bankrupt or is subject to a general assignment for the benefit of its creditors, or if a receiver should be appointed on account of Customer's insolvency. Customer may terminate any Proposal and these Terms, in whole or in part, for "Customer Cause" upon not less than thirty (30) days prior written notice to Contractor. For purposes of these Terms, "**Customer Cause**" includes any of the following: (a) a material breach of these Terms or any Proposal by Contractor, including, without limitation, any non-performance of Services agreed; (b) any violation by Contractor of any Laws; or (c) if Contractor is voluntarily or involuntarily dissolved, or is adjudged to be Bankrupt or is subject to a general assignment for the benefit of its creditors, or if a receiver should be appointed on account of Customer's insolvency. For the purpose of this Section, "**Bankrupt**" shall mean the filing of a voluntary or involuntary petition of bankruptcy or similar relief from creditors, insolvency, the appointment of a trustee or receiver, or any similar occurrence reasonably indicating an imminent inability to perform substantially all of the Customer's duties under these Terms or any Proposal. Upon any early termination of these Terms or otherwise, Contractor shall submit to Customer a detailed invoice of all Fees incurred to date, and Customer shall promptly pay the unpaid balance of all Fees within thirty (30) days of receipt, and Contractor shall deliver to Customer any product or materials completed and paid for as of the date of such termination.

3. **Products Provided by Customer.** Customer is solely and exclusively responsible for the delivery, supply and payment for all goods listed in (a)-(i), below (collectively, the "**Customer Products**") Contractor shall have no liability whatsoever for the Customer Products or any delay in providing the Services caused by or arising out of any delay in the delivery of the Customer Products to the Vessel. Contractor makes no warranty or guaranty arising out of or relating to any Customer Products.

    (a)    All welding gasses and weld filler material.

    (b)    Raw materials, including all piping and permanent structure.

    (c)    Valves, sensors, fittings, and any other balance of plant.

    (d)    Pipe hangers, fasteners, and other left-in-place components.

    (e)    Power: Customer will provide required power feed to the main deck of the barge

    (f)    Heavy cranes and heavy lifting equipment.

(g)  Compressed air: Customer will provide access to an air manifold on the main deck of the barge.

(h)  Portable toilets.

(i)  Housing: Contractor's crew housing throughout the duration of the project

4.  **Products Provided by Contractor.** Contractor is solely and exclusively responsible for the sourcing, procurement, shipment, delivery of, payment for, and installation of all other tools and materials required to complete the Services, excluding the items listed above. This includes but is not limited to cutting and welding tools, hand tools, PPE, lighting, ladders, scaffolding, air distribution equipment, and electrical distribution equipment (collectively, the "**Contractor Products**") utilized in connection with the Project and necessary for the completion of the Services. Customer shall have no liability whatsoever for any delay in providing the Services arising out of any delay in the delivery of the Contractor Products to the Vessel.

5.  **Limited Warranty of Contractor.** Contractor warrants that its Services shall be free from defective workmanship and defective materials provided by Contractor for sixty (60) days (the "**Warranty Period**") from the completion of such applicable Service (the "**Limited Warranty**"). If Contractor fails to comply with Contractor's Limited Warranty and Customer timely reports such failure in accordance with these Terms, Contractor's sole obligation to Customer shall be limited to the repair of such defective workmanship in accordance with the Limited Warranty. Customer acknowledges and agrees that this Limited Warranty extends only to Customer, and does not extend to any subsequent owner, crewmember, master, transferee, assignee or user/resident of the Vessel. In the case of any Products manufactured or supplied by any other person, entity or business, including, without limitation, the Products supplied by Customer ("**Third-Party Products**") covered by the warranty of another supplier or manufacturer, Contractor shall have no liability or responsibility to repair or replace such Third-Party Product unless the damage to such Third-Party Product is directly and solely attributable to Contractor's defective workmanship. In order to make a claim under this Limited Warranty, Customer must submit a detailed rejection notice to Contractor within the Warranty Period of the alleged breach of the Limited Warranty, specifying: (i) the alleged breach of the Limited Warranty; (ii) when the Services were delivered/completed; (iii) pictures and specifications of the alleged breach; and (iv) any Product specifications, numbers and information (collectively, the "**Rejection Notice**"). As promptly as possible after receipt by Contractor of the Rejection Notice, Contractor shall report its findings of its investigation of the alleged defect to the Customer. If Contractor determines, in its reasonable discretion, that the alleged defect is covered by Contractor's Limited Warranty, Contractor shall notify Customer of its election to repair or replace said properly rejected Services; provided, however, no refunds shall be given for any defective Products unless otherwise determined by Contractor in its sole and exclusive discretion. Customer acknowledges and agrees that the process and remedies specified in this Section 5 shall be Customer's sole and exclusive remedy for any breach of Contractor's Limited Warranty herein.

6.  **Customer's Duties.** Customer shall fully cooperate with Contractor in its performance of the Services, and provide to Contractor true, complete and correct copies of all reasonably requested documentation or information reasonably necessary, desirable or required by Contractor in connection with the Vessel and performance of the Services. Customer shall cooperate in good faith with Contractor to provide Contractor with reasonable access to any Customer facilities, utilities and areas of the Vessel as reasonably necessary or desired by Contractor in connection with the performance of the Services. Customer represents and warrants that all documents, disclosures, information and other materials provided by the Customer to Contractor in connection with the Services, including, without limitation, all third-party documents, disclosures, and/or information regarding the Vessel, are true, complete and correct. Customer represents and warrants that the individual executing the Proposal on its behalf has all necessary, legal and requisite power and authority to execute, deliver the Proposal and perform these Terms on behalf of the Customer, and all other agreements and instruments to be executed and delivered in connection with these Terms.

7.  **Subcontractors.** Subject to the terms and conditions of these Terms, Customer hereby grants to Contractor the right to assign its rights, duties or obligations under these Terms to its partners, contractors, agents and subcontractors (collectively, "**Subcontractors**") with respect to the performance of Services only, on a per Project basis, subject to the limitation set forth in these Terms and any Proposal, provided that Contractor shall remain responsible for completion of the Services hereunder in accordance with the terms as agreed herein. In the event of

the termination or expiration of these Terms, all subcontract rights will terminate effective as of the termination or expiration of these Terms.

8. **Vessel Obligations.** Customer acknowledges and agrees to the following:

(a) Customer shall be solely and exclusively responsible and liable for all Vessel conditions, including, without limitation, any pollution or hazardous materials generated from or dispersed from the Vessel and any non-conforming Vessel conditions, except to the extent due to the gross negligence or willful misconduct of Contractor. Contractor shall have no responsibility or liability for any injury to any person or property (including, without limitation, death or disability), any unusual or abnormal vessel specifications, pollution or hazardous materials used in or generating from the Vessel, differing Vessel conditions, unknown Vessel conditions, including, without limitation, conditions caused by or related to aged materials, hull/shell/body damage, inclement weather, failing products, electrical systems, latent defects or conditions or any other Vessel conditions not presented in writing to Contractor.

(b) Customer shall be solely and exclusively responsible for all gas, electrical, water, steam and related utility hookups for the Project and shall furnish the use of all applicable utilities for the Project to Contractor at Customer's sole and exclusive expense.

(c) Customer shall be solely and exclusively responsible and liable for any dust, dirt, water, metal shavings, steam, or other elements that may spread, spray or otherwise disperse from the Vessel, whether onto the Vessel or any adjacent properties, except to the extent due to the gross negligence or willful misconduct of Contractor. Customer shall provide the Vessel docked and safely afloat, free of slop, sludge, dirty ballast and any substances in the structure of the Vessel which are or may be dangerous or harmful to health.

(d) Customer shall at all times during the Project and performance of Contractor's Services provide Contractor's Subcontractors, employees, and agents with the right and license for the use of and access to the Vessel and shall not unreasonably restrict Contractor's access to the Project in any way.

9. **Indemnification; Indemnification Procedure.** Each party shall indemnify, defend, and hold the other party, and its officers, directors, members, managers, owners, employees, affiliates, subsidiaries, Subcontractors, successors and assigns (collectively, the "**Indemnified Parties**") harmless from and against all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees and the cost of enforcing any right to indemnification hereunder (collectively, "**Losses**") arising out of or resulting from any third party claim, suit, investigation, action, or other proceeding (each, an "**Action**") related to or arising out of or resulting from: (i) such party's breach of any representation, warranty, covenant, or obligation under these Terms or any Proposal; (ii) any gross negligence, willful misconduct, violation of Law or any acts, errors or omissions of such party or any of its owners, charterers, masters, crewmembers, underwriters users, heirs, successors and assigns (collectively, "**Indemnifying Parties**"), including, without limitation any errors, acts or omissions in violation of these Terms, or any applicable Law; (iii) any Products supplied by such party and used in the Project, or any injury to any person or property related thereto, including, without limitation, any use by any Indemnifying Party that is in violation of the policies, procedures, guides or instructions provided by Contractor to Customer. Customer further agrees to indemnify, defend, and hold the Contractor harmless from and against all Losses arising out of resulting from any Action related to or arising out of or resulting from any release of any pollution or hazardous materials from the Vessel, except to the extent due to the gross negligence or willful misconduct of Contractor. The Party seeking indemnification (the "**Indemnified Party**") shall promptly notify the other Party (the "**Indemnifying Party**") in writing of any Action and cooperate with the Indemnified Party at the Indemnifying Party's sole cost and expense. The Indemnifying Party shall immediately take control of the defense and investigation of the Action and shall employ counsel reasonably acceptable to the Indemnified Party to handle and defend the Action, at the Indemnifying Party's sole cost and expense. The Indemnifying Party shall not settle any Action in a manner that adversely affects the rights of the Indemnified Party without the Indemnified Party's prior written consent, which consent may not be unreasonably withheld or delayed. The Indemnified Party's failure to perform any obligations under this Section will not relieve the Indemnifying Party of its obligation under this Section. The Indemnified Party may participate in and observe the proceedings at its own cost and expense with counsel of its own choosing.

10. **Insurance: Required Coverage.**

    (a) <u>Coverage</u>. Contractor shall maintain throughout the Term at a minimum the insurance coverage set forth on the Certificate of Insurance included herewith as **Attachment A**.

    (a) <u>Proof of Insurance Coverage</u>. Contractor shall provide to Customer certificates of insurance evidencing compliance with the requirements of Article 9 (a), (b), (c) and (d) at the following times: (a) prior to commencement of the Contract Work; (b) upon renewal or replacement of each required policy of insurance; and (c) upon Customer's written request.

    (b) <u>Non-Provision of Insurance by Customer</u>. Consistent with Contractor's status as an independent contractor, Customer will not provide Contractor with any company, individual, or group insurance policy or any kind of insurance coverage including, but not limited to, workers' compensation, general or public liability, or errors and omissions.

11. **No Warranties; Limitation of Liability.**

    (a) <u>No Warranties</u>. EXCEPT AS EXPRESSLY SET FORTH IN THESE TERMS, TO THE FURTHEST EXTENT PERMITTED BY APPLICABLE LAW, CONTRACTOR HEREBY DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, WHETHER WRITTEN, ORAL, EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, EITHER IN FACT OR BY OPERATION OF LAW, INCLUDING: (I) ANY WARRANTIES REGARDING ANY PRODUCTS; (II) ANY WARRANTIES REGARDING SERVICES PROVIDED BY CONTRACTOR, AND ANY OTHER TECHNICAL INFORMATION, TECHNIQUES, MATERIALS, METHODS, PRODUCTS, PROCESSES, OR PRACTICES MADE AVAILABLE BY CONTRACTOR; (III) ALL IMPLIED WARRANTIES OF MERCHANTABILITY, QUALITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT; (IV) WARRANTIES ARISING FROM A COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE, OR TRADE PRACTICE; AND (V) ANY WARRANTIES REGARDING THE SERVICES COMPLIANCE WITH ANY APPLICABLE LAWS, INCLUDING, WITHOUT LIMITATION, ANY APPLICABLE MARITIME LAWS OR ANY INTEGRATION WITH ANY UTILITIES OR SYSTEMS SERVING THE VESSEL. WITHOUT LIMITATION TO THE FOREGOING, CONTRACTOR WILL HAVE NO LIABILITY WHATSOEVER TO CUSTOMER, ANY CUSTOMER PARTY, OR ANY OTHER PERSON FOR OR ON ACCOUNT OF ANY INJURY, LOSS, OR DAMAGE, OF ANY KIND OR NATURE, SUSTAINED BY, OR ANY DAMAGE ASSESSED OR ASSERTED AGAINST, OR ANY OTHER LIABILITY INCURRED BY OR IMPOSED ON CUSTOMER OR ANY OTHER PERSON, ARISING OUT OF OR IN CONNECTION WITH OR RESULTING FROM ANY INJURY CAUSED TO ANY PERSON OR PROPERTY BY CUSTOMER OR ANY CUSTOMER PARTY. THIS DISCLAIMER OF WARRANTIES HAS BEEN SPECIFICALLY NEGOTIATED BY THE PARTIES IN REACHING AN AGREEMENT ON THE PRICE TO BE CHARGED FOR THE SERVICES.

    (b) <u>Limitation of Liability</u>. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, CONTRACTOR WILL NOT BE LIABLE TO CUSTOMER, OR ANY CUSTOMER PARTY OR ANY OTHER PERSON FOR ANY INJURY TO OR LOSS OF GOODWILL, BUSINESS, OR OPPORTUNITIES (REGARDLESS OF HOW THESE ARE CLASSIFIED AS DAMAGES), OR FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL, PUNITIVE, OR ENHANCED DAMAGES, WHETHER ARISING OUT OF BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, PRODUCT LIABILITY, OR OTHERWISE (INCLUDING THE ENTRY INTO, PERFORMANCE, OR BREACH OF THESE TERMS), REGARDLESS OF WHETHER SUCH LOSS OR DAMAGE WAS FORESEEABLE OR THE PARTY AGAINST WHOM SUCH LIABILITY IS CLAIMED HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGE, AND NOTWITHSTANDING THE FAILURE OF ANY AGREED OR OTHER REMEDY OF ITS ESSENTIAL PURPOSE. IN NO EVENT SHALL CONTRACTOR'S AGGREGATE LIABILITY EXCEED $25,000.00 OR ONE-HALF OF THE AMOUNT ACTUALLY PAID BY OR DUE FROM CUSTOMER UNDER THE APPLICABLE PROPOSAL (WHICHEVER IS LESS) IN THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO SUCH CLAIM.

12. **Miscellaneous.**

(a)  Entire Agreement; Conflicts. The applicable Proposal Documents, collectively represent the full, final and comprehensive agreement and understanding of the parties and any modification thereof shall not be effective unless contained in writing and signed by both parties. Any prior or contemporaneous agreements, whether oral or written, relating to the subject matter discussed herein have been merged into these Terms. In the event of any conflict between the terms and provisions of these Terms and those of any Proposal or other document, the following order of precedence will govern: (i) the most recent Change Order shall control over any other Change Order, Proposal or these Terms; and (ii) the most recent Proposal shall control over any prior Proposal or these Terms.

(b)  Severability. Each provision of these Terms shall be considered severable such that if any one provision or clause conflicts with existing or future applicable law, or may not be given full effect because of such law, this shall not affect any other provision of these Terms that can be given effect without the conflicting provision of clause; provided however, that such provision shall be modified, to the minimum extent possible and necessary, to be enforceable to the fullest extent and in compliance with any such applicable laws, prior to it being severed from these Terms in its entirety.

(c)  Assignment; Third-Party Beneficiaries. Customer shall not assign any Project Document without Contractor's prior written consent, which may be withheld in its sole and exclusive discretion, *except* that Customer may make an assignment to a lender or lender agent if such assignment is carried out pursuant to Customer's obligations under its construction financing agreements. Any attempted assignment of any Project Document that does not comply with this Section 12(c) shall be null, void, and of no force or effect whatsoever. Subject to these Terms, these Terms are for the sole benefit of the Parties and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or will confer upon any other person, business or entity, any legal or equitable right, benefit, or remedy of any nature whatsoever, under or by reason of these Terms.

(d)  Governing Law; Venue; Arbitration; Equitable Relief.

(i)  Governing Law; Venue. Subject to Section 12(d)(ii), below, these Terms, any Proposal, and any Change Order shall be governed by and construed in accordance with the domestic laws of the state of Washington without giving effect to any choice of law or conflict of laws provision or rule (whether of the state of Washington or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the state of Washington. The Parties hereto agree that the exclusive jurisdiction and venue for any action brought between the Parties under these Terms shall be the Superior Court for King County, Washington, or the federal courts residing in the Western District of Washington, and each of the Parties hereby agrees and submits itself to the exclusive jurisdiction and venue of such courts for such purpose. In the event of any litigation between the Parties hereto arising out of these Terms, the prevailing Party shall be allowed all reasonable attorneys' fees, court costs and expenses incurred in such litigation, including all such expenses incurred on appeal, together with all reasonable costs and disbursements necessary to enforce these Terms.

(ii)  Arbitration. The parties will first make a good faith effort to settle by negotiation any dispute regarding these Terms. If a party believes a dispute has arisen, it shall provide written notice to the other party of such dispute describing in detail the dispute. The parties shall use their good faith efforts to meet and confer on such dispute and negotiate a resolution to such dispute within five (5) business days of a party's receipt of such notice. If a settlement has not been reached within fifteen (15) days of commencing that negotiation, then either party may submit the dispute to arbitration administered by the Judicial Arbitration Mediation Service ("JAMS"). There will be one arbitrator selected by the parties within ten (10) days of the notice of the arbitration demand or, if not, by JAMS, from its list of approved arbitrators with experience in hearing related cases. JAMS' "Streamlined Arbitration Rules & Procedures" shall apply to all other claims involving less than $250,000. All other claims shall be determined in accordance with JAMS Comprehensive Arbitration Rules and Procedures. The award rendered by the arbitrator shall be final and binding on the parties and may be entered and enforced in any court having jurisdiction, and any court where a party or its assets is located (to whose jurisdiction the parties' consent for the purpose of enforcing the award). However, this Section will not apply to (A) actions for equitable relief, or (B) actions to enforce or appeal any arbitration award. Any arbitration under this Section will be conducted in King County, Washington at the offices of Contractor's counsel. In any action under the preceding clause (A) or (B), each party waives any right to a jury trial. The arbitrator shall apply substantive law and may award reasonable attorneys' fees and costs to the substantially prevailing party consistent with these Terms. The award rendered by the arbitrator shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

    (iii) Equitable Relief. Each Party acknowledges that a material breach by the other Party of these Terms may cause the non-breaching Party irreparable harm, for which an award of damages would not be adequate compensation and, in the event of such a material breach or threatened breach, the non-breaching Party will be entitled to seek equitable relief, including in the form of a restraining order, orders for preliminary or permanent injunction, specific performance, and any other relief that may be available from any court, and the Parties hereby waive any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such relief. These remedies are not exclusive but are in addition to all other remedies available under these Terms at law or in equity, subject to any express exclusions or limitations in these Terms to the contrary.

  (e) Survival. The provisions of Sections 1(c), 3, 5-9, 11 and 12 shall survive the termination or expiration of these Terms.

  (f) Notices. Any notice required or permitted by these Terms shall be in writing and delivered in person, sent by documented overnight delivery service, mailed by certified or registered mail, postage prepaid, or sent via email to the appropriate designated address of the intended recipient, transmission verification required, to the appropriate Party or Parties at the addresses referenced in the applicable Proposal, or to such other address as the Parties may hereafter designate to the other in writing.

  (g) Force Majeure. A Party (referred to in this Section as a "**Force Majeure Party**") shall be excused from the performance of its applicable obligation(s) under these Terms (other than the payment of any monies owed to the other Party, including, without limitation, any Fees) to the extent that such performance is made commercially impracticable, illegal, or impossible by an event of Force Majeure that is beyond the Force Majeure Party's reasonable control, and the Force Majeure Party provides written notice of the prevention within ten (10) business days of the occurrence of the Force Majeure event to the other Party (including details of the Force Majeure event, its anticipated duration and any action being taken to avoid or minimize its effect) and uses commercially reasonable efforts to avoid the effects of such Force Majeure and to perform the affected obligation(s) to the extent reasonably possible. Such excuse of performance shall be continued for so long as the condition constituting Force Majeure continues and the Force Majeure Party takes reasonable efforts to remove the condition or otherwise perform the affected obligation(s). For purposes of these Terms, "**Force Majeure**" shall mean only acts of God, strikes, civil disturbances, fires, earthquakes, hail, intense rain, inclement weather, governmental order or proclamation, outbreak or pandemic, supply chain interruption (to the extent such interruption is not caused by the gross negligence of such Party), acts of terrorism, floods, explosions, riots, war, rebellion, sabotage or failure or default of public utilities or common carriers. For clarity, notwithstanding the existence of a Force Majeure impacting a Party's performance hereunder, such Force Majeure Party shall continue performing all of its other obligations hereunder, and the other Party shall be excused from performing such of its obligations under these Terms that it cannot reasonably perform due to the non-performance by the Force Majeure Party due to such Force Majeure, until such Force Majeure Party completes performance of such obligations that are prevented by such Force Majeure.

  (h) Independent Contractor Relationship. Contractor including without limitation, the employees and Subcontractors of Contractor ("**Contractor Personnel**"), are independent contractors. Contractor Personnel are not employees of Customer. Contractor is solely responsible for the supervision, direction and control of Contractor Personnel at all times, and Customer will not be considered a joint employer of Contractor Personnel for any purpose. Nothing herein will create any partnership, joint venture, or similar relationship between Customer and Contractor or Contractor Personnel.

  (i) Construction. The Parties hereby reaffirm that each has read the foregoing Terms and that each Party has had the opportunity to review, negotiate and participate in the creation of these Terms through independent, competent legal counsel. The provisions contained herein shall not be construed or interpreted for or against any Party hereto because that Party drafted or caused that Party's legal representative to draft any of its provisions.



Leo's Welding and Fabrication, LLC
4451 26th Ave. W
Seattle, Wa. 98199
P: (206) 466-1692
F: (206) 420-7288

# Invoice

| Date | Invoice # |
|---|---|
| 10/9/2023 | 5770-P1 |

PAID 07/09/2024

**Bill To**
NORTHLINE SEAFOODS
SAYAK LOGISTICS LLC
TE: EXEMPT
4690 SAWMILL CREEK RD
SITKA, AK 99835

| Project | Terms | P.O. No. |
|---|---|---|
| | Due on receipt | HANNA BARGE-REEFER ... |

| Quantity | Day | Name | Description | Rate | Amount |
|---|---|---|---|---|---|
| | | | Scope: SEE "Proposal and Master Service Agreement - Northline" | | |
| | | | MATERIAL | | |
| 100.00 | | | - Fitting and welding: ea, fabrication and isnstallation of hangers, layaout and project closing | 184.08 | 18,408.00 |
| 0.20 | | | - Fitting and welding: Safety Lines in Engine Room and Uper Deck | 90,480.00 | 18,096.00 |
| 0.20 | | | - Fitting and welding: Coolant pipelines for Upper deck and Aft Engine Rooom | 195360.00 | 39,072.00 |
| 0.20 | | | - Fitting and welding: Coolant pipelines in Engine Room | 414360.00 | 82,872.00 |
| | | | PER DIEM | | |
| 134.40 | | | - Meals | 59.00 | 7,929.60 |
| 14.40 | | | - Incidentals: transportation, 6 hr per person plus fuel. | 136.94 | 1,971.94 |
| | | | Note:
- Lead Time: 8 Weeks, 12 people, 6 day/week, 10 hr/day.
- Change order requests will be billed as additional labor at $120.00/hr flat rate and materials as required.

*** 20% DEPOSIT | | |

TERMS AND CONDITIONS: If any late fee and/or interest is accrued as a result of late balance, payment received will apply to these late fees/interest fist, then the remaining balance from the payment, if any, will go towards invoices as instructed in your remittance. If no remittance detail is supplied, after fulfilling fees/interest invoices on late payments first, any remaining balance shall apply sequentially to oldest invoices
* If Tax Exempt Certificate is not presented, Sale Tax shall add up in your invoice.
* Upon expiration of your term and from the date on invoice, unpaid balances will accrue $35.00 per month or interest of 1% per month on balance due whichever is greater, plus $65.00 per month in collection costs plus legal fees if any. "Due on Receipt" term expires within 14 days from date on invoice if payment is not received. Payment is required to pick up/delivery of parts and/or materials.
*** 3% Transaction Fee may apply for Credit/Debit Card Payments.

| | |
|---|---|
| Sales Tax (10.25%) | $0.00 |
| Total | $168,349.54 |
| Payments/Credits | -$168,349.54 |
| Balance Due | $0.00 |



**Leo's Welding and Fabrication, LLC**
4451 26th Ave. W
Seattle, Wa. 98199
P: (206) 466-1692
F: (206) 420-7288

# Invoice

| Date | Invoice # |
|---|---|
| 11/1/2023 | 5770-P2 |

**Bill To**
NORTHLINE SEAFOODS
SAYAK LOGISTICS LLC
TE: EXEMPT
4690 SAWMILL CREEK RD
SITKA, AK 99835

| Project | Terms | P.O. No. |
|---|---|---|
| HANNA BARGE-REEFER PIPES | Net 30 | 30% 42445-Hanna |

| Quantity | Day | Name | Description | Rate | Amount |
|---|---|---|---|---|---|
| | | | Scope: SEE "Proposal and Master Service Agreement - Northline" | | |
| | | | MATERIAL | | |
| 150.00 | | | - Fitting and welding: ea, fabrication and installation of hangers, layout and project closing | 184.08 | 27,612.00 |
| 0.30 | | | - Fitting and welding: Safety Lines in Engine Room and Upper Deck | 90,480.00 | 27,144.00 |
| 0.30 | | | - Fitting and welding: Coolant pipelines for Upper deck and Aft Engine Room | 195360.00 | 58,608.00 |
| 0.30 | | | - Fitting and welding: Coolant pipelines in Engine Room | 414360.00 | 124,308.00 |
| | | | PER DIEM | | |
| 201.60 | | | - Meals | 59.00 | 11,894.40 |
| 21.60 | | | - Incidentals: transportation, 6 hr per person plus fuel. | 136.94 | 2,957.90 |
| | | | Note:<br>- Lead Time: 8 Weeks, 12 people, 6 day/week, 10 hr/day.<br>- Change order requests will be billed as additional labor at $120.00/hr flat rate and materials as required. | | |

TERMS AND CONDITIONS: If any late fee and/or interest is accrued as a result of late balance, payment received will apply to these late fees/interest fist, then the remaining balance from the payment, if any, will go towards invoices as instructed in your remittance. If no remittance detail is supplied, after fulfilling fees/interest invoices on late payments first, any remaining balance shall apply sequentially to oldest invoices
* If Tax Exempt Certificate is not presented, Sale Tax shall add up in your invoice.
* Upon expiration of your term and from the date on invoice, unpaid balances will accrue $35.00 per month or interest of 1% per month on balance due whichever is greater, plus $65.00 per month in collection costs plus legal fees if any. "Due on Receipt" term expires within 14 days from date on invoice if payment is not received. Payment is required to pick up/delivery of parts and/or materials.
*** 3% Transaction Fee may apply for Credit/Debit Card Payments.

| | |
|---|---|
| Sales Tax (10.25%) | $0.00 |
| Total | $252,524.30 |
| Payments/Credits | -$235,854.18 |
| Balance Due | $16,670.12 |



**Leo's Welding and Fabrication, LLC**
4451 26th Ave. W
Seattle, Wa. 98199
P: (206) 466-1692
F: (206) 420-7288

# Invoice

| Date | Invoice # |
|---|---|
| 12/1/2023 | 5770-P3 |

**Bill To**
NORTHLINE SEAFOODS
SAYAK LOGISTICS LLC
TE: EXEMPT
4690 SAWMILL CREEK RD
SITKA, AK 99835

| Project | Terms | P.O. No. |
|---|---|---|
| HANNA BARGE-REEFER PIPES | Net 30 | 30% 42445-Hanna |

| Quantity | Day | Name | Description | Rate | Amount |
|---|---|---|---|---|---|
| | | | Scope: SEE "Proposal and Master Service Agreement - Northline" | | |
| | | | **MATERIAL** | | |
| 150.00 | | | - Fitting and welding: ea, fabrication and installation of hangers, layout and project closing | 184.08 | 27,612.00 |
| 0.30 | | | - Fitting and welding: Safety Lines in Engine Room and Upper Deck | 90,480.00 | 27,144.00 |
| 0.30 | | | - Fitting and welding: Coolant pipelines for Upper deck and Aft Engine Room | 195360.00 | 58,608.00 |
| 0.30 | | | - Fitting and welding: Coolant pipelines in Engine Room | 414360.00 | 124,308.00 |
| | | | **PER DIEM** | | |
| 201.60 | | | - Meals | 59.00 | 11,894.40 |
| 21.60 | | | - Incidentals: transportation, 6 hr per person plus fuel. | 136.94 | 2,957.90 |
| | | | Note:
- Lead Time: 8 Weeks, 12 people, 6 day/week, 10 hr/day.
- Change order requests will be billed as additional labor at $120.00/hr flat rate and materials as required. | | |

TERMS AND CONDITIONS: If any late fee and/or interest is accrued as a result of late balance, payment received will apply to these late fees/interest fist, then the remaining balance from the payment, if any, will go towards invoices as instructed in your remittance. If no remittance detail is supplied, after fulfilling fees/interest invoices on late payments first, any remaining balance shall apply sequentially to oldest invoices
* If Tax Exempt Certificate is not presented, Sale Tax shall add up in your invoice.
* Upon expiration of your term and from the date on invoice, unpaid balances will accrue $35.00 per month or interest of 1% per month on balance due whichever is greater, plus $65.00 per month in collection costs plus legal fees if any. "Due on Receipt" term expires within 14 days from date on invoice if payment is not received. Payment is required to pick up/delivery of parts and/or materials.
*** 3% Transaction Fee may apply for Credit/Debit Card Payments.

| | |
|---|---|
| Sales Tax (10.25%) | $0.00 |
| Total | $252,524.30 |
| Payments/Credits | -$228,757.10 |
| Balance Due | $23,767.20 |



**Leo's Welding and Fabrication, LLC**
4451 26th Ave. W
Seattle, Wa. 98199
P: (206) 466-1692
F: (206) 420-7288

# Invoice

| Date | Invoice # |
|---|---|
| 3/6/2024 | 5770-P4 |

**Bill To**
NORTHLINE SEAFOODS
SAYAK LOGISTICS LLC
TE: EXEMPT
4690 SAWMILL CREEK RD
SITKA, AK 99835

| Project | Terms | P.O. No. |
|---|---|---|
| HANNA BARGE-REEFER PIPES | Due on receipt | FINAL 42445-Hanna |

| Quantity | Day | Name | Description | Rate | Amount |
|---|---|---|---|---|---|
| | | | Scope: SEE "Proposal and Master Service Agreement - Northline" | | |
| | | | **MATERIAL** | | |
| 100.00 | | | - Fitting and welding: ea, fabrication and installation of hangers, layout and project closing | 184.08 | 18,408.00 |
| 0.20 | | | - Fitting and welding: Safety Lines in Engine Room and Upper Deck | 90,480.00 | 18,096.00 |
| 0.20 | | | - Fitting and welding: Coolant pipelines for Upper deck and Aft Engine Room | 195360.00 | 39,072.00 |
| 0.20 | | | - Fitting and welding: Coolant pipelines in Engine Room | 414360.00 | 82,872.00 |
| | | | **PER DIEM** | | |
| 134.40 | | | - Meals | 59.00 | 7,929.60 |
| 14.40 | | | - Incidentals: transportation, 6 hr per person plus fuel. | 136.94 | 1,971.94 |
| | | | Note:
- Lead Time: 8 Weeks, 12 people, 6 day/week, 10 hr/day.
- Change order requests will be billed as additional labor at $120.00/hr flat rate and materials as required. | | |

TERMS AND CONDITIONS: If any late fee and/or interest is accrued as a result of late balance, payment received will apply to these late fees/interest fist, then the remaining balance from the payment, if any, will go towards invoices as instructed in your remittance. If no remittance detail is supplied, after fulfilling fees/interest invoices on late payments first, any remaining balance shall apply sequentially to oldest invoices
* If Tax Exempt Certificate is not presented, Sale Tax shall add up in your invoice.
* Upon expiration of your term and from the date on invoice, unpaid balances will accrue $35.00 per month or interest of 1% per month on balance due whichever is greater, plus $65.00 per month in collection costs plus legal fees if any. "Due on Receipt" term expires within 14 days from date on invoice if payment is not received. Payment is required to pick up/delivery of parts and/or materials.
*** 3% Transaction Fee may apply for Credit/Debit Card Payments.

| | |
|---|---|
| Sales Tax (10.25%) | $0.00 |
| Total | $168,349.54 |
| Payments/Credits | $0.00 |
| Balance Due | $168,349.54 |